

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Jno. Q. McAdams,
Commissioner,
Department of Banking
Austin, Texas

Dear Mr. McAdams:          Opinion No. O-5368

Re: Authority of State banks to
engage in branch banking in
Military Reservations and
Navy Yards.

We beg to acknowledge receipt of your letter requesting a ruling from this department, as follows:

"Major Schooley of the War Department,
Washington, D. C., has just telephoned to
us to know whether State-chartered banks of
Texas may provide banking facilities in Military Reservations and Navy Yards. House Bill
S. 1403 of the 77th Congress, Second Session,
authorizes National banks to provide such
facilities, even in States where State chartered institutions are prohibited by the Constitution in establishing such stations.

"Our State Constitution, as well as Article 330 Revised Statutes, seems to prohibit
our State banks from establishing facilities
of this kind even under war conditions and
in emergencies created thereby.

"Major Schooley said the Governors of
some of our States were over-riding the mandates of the Constitutions in regard to
branches for State banks and he just wondered if our own government was clothed with
such authority.

Honorable Jno. G. McAdams - page 2

> "What we would like to know is may Texas
> State chartered banks provide check paying,
> deposit taking and exchange issuing stations
> in Military Reservations and Navy Yards."

As we construe your letter, it requests our
opinion upon the broad question stated in the captioned
subject matter -- that is, the authority of a State bank-
ing corporation to establish a branch bank. As thus con-
strued, the question should be answered in the negative.

Section 16 of Article XVI of the Constitution
reads as follows:

> "The Legislature shall by general laws,
> authorize the incorporation of corporate
> bodies with banking and discounting privi-
> leges, and shall provide for a system of
> State supervision, regulation and control
> of such bodies which will adequately pro-
> tect and secure the depositors and credit-
> ors thereof.

> "No such corporate body shall be char-
> tered until all of the authorized capital
> stock has been subscribed and paid for in
> full in cash. Such body corporate shall
> not be authorized to engage in business at
> more than one place which shall be desig-
> nated in its charter. * * *." (Emphasis sup-
> plied).

The phrasing of your specific question quoted in
the last paragraph of your letter with respect to the par-
ticular service of the "stations" contemplated does not
call for a different answer. Maintaining such "stations"
would constitute engaging "in business at more than one
place", within the meaning of Section 16 of the Constitu-
tion.

Under all of the decisions throughout the United
States, the business of accepting deposits of money for re-
payment upon the order of the depositor constitutes the
business of banking. It is perhaps the only never-failing
indicium of the banking functions now that the authority to
issue circulating notes has been taken away from the Nation-
al associations.

Honorable John Q. McAdams - page 3

The ordinary essential features of the banking business are, the power to accept deposits of money repayable to the order of the depositor, the discounting of commercial paper, and the governmental authority to issue circulating notes, which last-named power, as above stated, has been abrogated.

Any bank may, of course, perform other business transactions, and even carry on to a degree other businesses, not essentially banking functions, when reasonably necessary as an incidental power to perform their essential functions as banking institutions.

The general rule is stated in 9 C.J.S., Title -- BANKS AND BANKING, p. 31, Sec. 3, as follows:

"As has been indicated in Section 1, the principal attributes to the bank are the right to issue negotiable notes, to discount notes, and to receive deposits; and while as a matter of modern practice banks usually exercise any two or even all three of these functions, it is not necessary that they exercise them all, but an institution exercising any one or more of these functions is a bank in the strictest commercial sense."

Later in the same section that text declares:

"Originally, the business of banking consisted only of receiving deposits for safe keeping, and even at the present time a bank is primarily a place for the deposit of money, and the receiving of the money of others on deposit is a distinctive feature of the business of banking."

Zollman on Banks and Banking, Vol. 1, Sec. 67, declares:

"The very business of the bank is to have a place where deposits are received and paid out and where money is loaned on security. Not all these functions, however, need be exercised in order to constitute an institution a bank. The exercise of a single

Honorable John Q. McAdams - page 4

function of banking, such as loaning money,
selling bonds, or issuing currency may be
sufficient to bring the institution within
the regulations passed by the State relative
to banks."

"Banks, in the commercial sense, are of
three kinds, to-wit: 1, of deposit; 2, of
discount; 3, of circulation. Strictly speak-
ing, the term 'bank' implies a place for the
deposit of money, as that is the most obvious
purpose of such an institution. Originally
the business of banking consisted only in re-
ceiving deposits, such as bullion, plate and
the like, for safe keeping until the deposit-
er should see fit to draw it out for use, but
the business, in the progress of events, was
extended, and bankers assumed to discount
bills and notes and to loan money upon mort-
gage, pawn or other security, and at a still
later period to issue notes of their own in-
tended as a circulating currency and a medium
of exchange instead of gold and silver. Modern
bankers frequently exercise any two or even all
three of those functions, but it is still true
that an institution prohibited from exercising
any more than one of those functions is a bank
in the strictest commercial sense, and unless
such a bank is brought within the proviso under
consideration, is equally subject to taxation
as if authorized to make discounts and issue
circulation as well as to receive deposits." --
George Oulton, Collector, v. The San Francisco
Savings Union, 21 Law Ed. (U.S.) 618.

In Kaliski v. Gossett, Banking Commissioner,
109 S. W. (2) 340, it is said:

"In the case of In re Prudence Company,
(C.C.A.) 79 F.(2) 77,79, we find the follow-
ing definition of a bank: 'Strictly speaking,
the term bank implies a place for the deposit
of money, as that is the most obvious purpose
of such an institution.' The opinion contin-
ues: 'And all of the cases so far as we are
advised, which have construed the words,"bank-

> ing corporations," as used in the Bank-
> ruptcy Act, have regarded the legal power
> to receive deposits as the essential thing.'"
> (Many authorities here cited).

The Kaliski case held that a stockholder in a
Morris Plan Bank was not subject to the super-added liabil-
ity of the Constitution and statutes, because such so-call-
ed Morris Plan Banks were not then authorized to accept de-
posits. The very things which your suggestion contemplates
-- the depositing of money and cashing of checks -- was not
present in the Kaliski case, for which reason it appears
the court held as it did with respect to the stockholders'
liability. The Supreme Court refused a writ of error in
that case.

Your quoted suggestion from Major Schooley and his
implied request that we adopt it, to the effect that the
Governors of some of the states were overriding the mandates
of the Constitution in regard to branches for State banks,
is not in keeping with constitutional mandates.

> "Texas is a free and independent state,
> subject only to the Constitution of the United
> States, and the maintenance of our free insti-
> tutions and the perpetuity of the Union depend
> upon the preservation of the right of local
> self government, unimpaired to all the states."
> --Bill of Rights, Constitution, Article 1, Sec-
> tion I.

> "The military shall at times be subordinate
> to the civil authorities." --Section 24, Article
> I, Constitution.

> "No power of suspending laws in this State
> shall be exercised except by the Legislature."
> --Section 18, Article I, Constitution.

Of course, the power of the Legislature itself to
suspend law pertains only to legislative acts and not to con-
stitutional provisions. The enthusiastic suggestion that
any officer, or even department of the Government, may sus-
pend the Constitution finds no support in law.

In Ex parte Milligan (U.S.) 18 Law Ed. p. 298, it is said:

> "Martial rule can never exist where the courts are open, and in the proper and unobstructed exercise of their jurisdiction."

The court upheld the right of Milligan to the constitutional writ of habeas corpus upon the principle announced by it.

Your question, therefore, is answered as above indicated.

Very truly yours

ATTORNEY GENERAL OF TEXAS

Ocie Speer
Assistant

APPROVED JUN 12, 1943

Gerald C. Mann

OS-MR     ATTORNEY GENERAL OF TEXAS

APPROVED JUN 12, 1943

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN